**Robert TERRY, Petitioner–Appellant,**

v.

**Nancy MARTIN, Chief Probation Officer, and James E. Ryan, Attorney General of the State of Illinois, Respondents–Appellees.**

No. 96–2152.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1996.

Decided July 8, 1997.

Frederick F. Cohn (argued), Chicago, IL, for Petitioner–Appellant.

Lisa A. Hoffman (argued), Office of the Attorney General, Chicago, IL, for Respondents–Appellees.

Before BAUER, WOOD, JR. and DIANE P. WOOD, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

Petitioner Robert Terry ("Terry") appeals from a district court order denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Because Terry received a full and fair opportunity to litigate his Fourth Amendment claims before the Illinois state courts, *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), bars his petition, and we, therefore, affirm.

**I.**

When considering a petition for a writ of habeas corpus challenging a state court judgment, we accept the facts as found by the state court. *Smith v. Fairman*, 862 F.2d 630, 632 (7th Cir.1988). The facts in this case, as determined by the Illinois appellate court in *People v. Terry*, No. 1–94–1434 (Ill. App.Ct. March 24, 1995) (Rule 23 Order), may be summarized as follows. After Chicago police entered Juanita Coward's apartment, they observed Terry sitting at a dining room table sniffing white powder from a plate. When Terry saw the police, he dumped the powder into a bag next to him. Police seized the bag and discovered three foil packets containing a white powder that Terry identified as heroin. Police arrested Terry and charged him with possession with intent to deliver less than 10 grams of a substance containing heroin.

Before trial, Terry moved to suppress the heroin, contending that the search of Coward's apartment violated his Fourth Amendment rights, and the trial court held an evidentiary hearing on the motion. A Chicago police detective testified that he entered the apartment at the front door and that when he entered, he saw Terry sniffing the white powder at the dining room table. Terry testified that at the time the police searched the apartment, he was visiting Coward and her husband for the purpose of buying her-

oin. He further testified that he did not live at the apartment and that he did not intend to spend the night at the apartment or stay longer than necessary to finish the drug transaction. He stated that he did not have a key to the apartment, did not keep any clothes at the apartment, and did not intend to leave the brown bag there after he left. After hearing his testimony and the arguments of counsel, the trial court denied his motion, finding that Terry had no standing to object to the search. The court concluded that Terry had no expectation of privacy which society was willing to accept. After a stipulated bench trial in the Circuit Court of Cook County, Terry was convicted of possession of a controlled substance, and the court sentenced him to twenty-four months probation.

Terry appealed his conviction to the Appellate Court of Illinois, First Judicial District, contending that the trial court erred in denying his motion to suppress. The appellate court affirmed, and both the Illinois Supreme Court and the United States Supreme Court declined review of Terry's case. Terry then filed the instant petition for a writ of habeas corpus.

**II.**

■ Terry contends that he is entitled to a writ of habeas corpus because his conviction was based in part upon evidence which the police seized during an illegal search. However, before we may consider the merits of Terry's Fourth Amendment claim, we must determine whether Terry's claim falls within the substantive scope of the habeas corpus writ. *Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir.1992). The district court determined that because Terry had a full and fair opportunity to litigate his claim before the Illinois courts, *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), took his claim outside the scope of the writ. We review the district court's resolution of this question of law regarding the denial of a petition for a writ of habeas corpus *de novo*. See *Verdin v. O'Leary*, 972 F.2d 1467, 1481 (7th Cir.1992).

As the district court noted, in *Stone v. Powell*, 428 U.S. at 482, 96 S.Ct. at 3046, the Supreme Court held that a state prisoner raising a Fourth Amendment claim is not entitled to habeas corpus relief if the state has provided the prisoner "an opportunity for full and fair litigation" of his claim. Thus, if Terry received a full and fair opportunity to litigate his Fourth Amendment claim before the Illinois state courts, we may not consider the merits of his petition. A prisoner receives an opportunity for full and fair litigation of a Fourth Amendment claim when (1) the prisoner has clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of his Fourth Amendment rights and (2) the state court has carefully and thoroughly analyzed the facts and applied the proper constitutional case law to the facts. *Pierson*, 959 F.2d at 1391.

The record reveals that Terry clearly presented the factual basis for his Fourth Amendment claim to the Illinois courts and that he fully litigated the matter before the Illinois courts. Terry filed a motion to suppress in the trial court, contending that he was present at Coward's apartment under circumstances which gave him a reasonable expectation of privacy in the apartment and that the police entered the apartment without a warrant and without probable cause, thereby violating his Fourth Amendment rights. Before ruling on his motion, the trial court held a hearing at which it entertained testimony from witnesses and the arguments of counsel. Additionally, Terry fully briefed his Fourth Amendment claim and presented oral argument on the claim before the appellate court.

Even though he presented his claim to the Illinois courts, Terry maintains that he did not have a full and fair opportunity to litigate it because the Illinois courts did not apply the proper constitutional case law. Under Supreme Court case law, a person may object to a search only if he has "a legitimate expectation of privacy in the invaded place." *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967); *accord Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). A person's expectation of privacy is legitimate only if it is one that society is willing to accept. *Katz*, 389 U.S. at 361, 88 S.Ct. at 516–17 (Harlan, J. concurring); *accord Minnesota v. Olson*, 495 U.S. 91, 95–96, 110 S.Ct. 1684, 1687–88, 109 L.Ed.2d 85 (1990). A person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from an unreasonable government intrusion into that place. *Rakas*, 439 U.S. at 142, 99 S.Ct. at 429–30. Accordingly, the Supreme Court has recognized that overnight guests have a legitimate expectation of privacy in their hosts' homes. *Olson*, 495 U.S. at 100, 110 S.Ct. at 1689–90. In its written opinion, the appellate court clearly stated the foregoing standards, and analyzed the facts of Terry's case under these standards. Likewise, the trial court enunciated these standards and applied them to the facts of Terry's case when ruling on his motion to suppress. Therefore, the Illinois courts seemingly applied the proper constitutional case law to the facts of Terry's case.

However, Terry maintains that the Illinois courts applied the incorrect legal standard because the courts refused to recognize that *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), holds that all guests have a per se reasonable expectation of privacy in their host's home.[1] Contrary to Terry's assertions, *Olson* involved an overnight guest and no language in the Court's opinion expressly states that its holding should not be limited to overnight guests. Additionally, several portions of the Court's reasoning rely on the peculiar nature of an overnight stay in concluding that an overnight guest is entitled to Fourth Amendment protection. *See id.* at 98–100, 110 S.Ct. at 1688–90. Thus, in looking to the facts and circumstances of Terry's relationship to the searched apartment to determine whether Terry had a reasonable expectation of privacy in the apartment, the Illinois courts applied the appropriate constitutional standard.

---

1. Both courts did note *Olson*, but they determined that it applied to overnight house guests only. Thus, they construed Terry's arguments as asking the courts to extend the rule in *Olson* to apply to temporary day visitors as well. However, relying on Illinois precedent, both courts declined to extend *Olson*. (3/24/95. Rule 23 Order at 8; Rep. of Proceedings on 2/15/94. at 24).

Moreover, both courts thoroughly analyzed the facts of Terry's case. The courts evaluated Terry's relationship to the searched apartment, finding that he had no key to the apartment, no belongings inside the apartment, and no intent to remain at the apartment longer than necessary to complete his drug transaction. (3/24/95 Rule 23 Order at 4–5; Rep. of Proceedings on 2/15/94 at 25, 30). Based on these facts, the courts concluded that Terry was a temporary visitor with no connection to the apartment other than his criminal activities and that, as such, he had no legitimate expectation of privacy in the apartment. (3/24/95 Rule 23 Order at 9; Rep. of Proceedings on 2/15/94 at 25, 30). Thus, the Illinois courts carefully and thoroughly analyzed the facts of Terry's case in light of the appropriate constitutional case law, and *Stone* should preclude Terry from obtaining federal habeas relief. *See Pierson*, 959 F.2d at 1392.

■ Finally, Terry contends that he did not have a full and fair opportunity to litigate his Fourth Amendment claims before the Illinois courts because the courts concluded that Terry lacked standing to contest the search of the apartment. He implicitly reasons that by concluding that he lacked standing, the Illinois courts concluded that they could not litigate his claim. However, the Supreme Court has explained that any theoretical distinction between standing to raise a Fourth Amendment claim and the merits of that Fourth Amendment claim is illusory. *Rakas*, 439 U.S. at 138–40, 99 S.Ct. at 427–29. In *Rakas*, the Court reasoned that its "long history of insistence that Fourth Amendment rights are personal in nature" had already resolved many of the "traditional standing inquiries" and that the definition of those rights should fall within the substantive Fourth Amendment law rather than within the law of standing. *Id.* at 140, 99 S.Ct. at 428–29. Thus, the Court "dispensed with the rubric of standing," *id.*, and held that the standing requirement is subsumed under substantive Fourth Amendment doctrine. *Id.* at 139, 99 S.Ct. at 428. Accordingly, a state court determination that a defendant has no standing to raise a Fourth Amendment claim is a resolution on the merits of his claim and may trigger the *Stone* bar to habeas relief if the state court reaches this

determination after affording the prisoner a full and fair opportunity to litigate his claim. *See Hall v. Lockhart*, 806 F.2d 165, 166 (8th Cir.1986) (*Stone* barred the petitioner's claim where the state trial court denied the petitioner's suppression motion, in part, because he had no standing to challenge the search).

### III.

Terry presented the factual and legal basis for his Fourth Amendment claim to the Illinois state courts and the Illinois courts carefully analyzed those factual and legal arguments. The courts concluded under the proper constitutional case law that Terry had no standing to challenge the contested search. Thus, the Illinois courts afforded Terry a full and fair opportunity to litigate his Fourth Amendment claim, and he is not entitled to federal habeas review of that claim. The district court order denying Terry's petition for a writ of habeas corpus is AFFIRMED.