UNITED STATES of America, Appellee,

v.

**Erick TORRES, Defendant, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Mark RODRIGUEZ, Defendant, Appellant.**

Nos. 97–2416, 972417.

United States Court of Appeals, First Circuit.

Heard Nov. 6, 1998.

Decided Dec. 3, 1998.

---

Martin I. Flax, by appointment of the court, for appellant Torres.

David P. Shapiro, by appointment of the court, for appellant Rodriguez.

Louis M. Fischer, Attorney, Appellate Section, Criminal Division, Department of Justice, with whom Donald K. Stern, United States Attorney, and Andrew Levchuk and Ariane D. Vuono, Assistant United States Attorneys, were on brief, for the United States.

Before SELYA, Circuit Judge, ALDRICH and CAMPBELL, Senior Circuit Judges.

SELYA, Circuit Judge.

A jury convicted defendants-appellants Erick Torres and Mark Rodriguez of a potpourri of offenses, including conspiracy to commit violent crimes to maintain or increase their positions in a racketeering enterprise; attempted murder, maiming, and assault with a dangerous weapon for that purpose; carrying firearms during and in relation to a violent crime; and possession of an unregistered firearm. *See* 18 U.S.C. §§ 1959(a), 924(c); 26 U.S.C. § 5861(d). In addition, the jury convicted Torres of being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). Following the imposition of lengthy prison sentences, both defendants appealed.

We recount the facts in the light most congenial to the verdict, consistent with record support. *See United States v. Houlihan,* 92 F.3d 1271, 1277 (1st Cir.1996). Given the strength of the government's case, a sketch suffices.

A drive-by shooting occurred in Springfield, Massachusetts, on February 21, 1995. The shooters wounded two juveniles (Stephenson Bellevue and Jesus Gambora). The victims' companion, William Scott, witnessed the incident but escaped unscathed. The police were alerted in a timely fashion and spotted the shooters' car in nearby Holyoke. They trailed the occupants to an apartment building. Once there, attention focused on a particular apartment and the authorities sought access. The tenant, Rafael Rodriguez (father of Mark Rodriguez), allowed the officers to enter the premises and conduct a consensual search.

The principal searcher, state trooper John Spellacy, found Mark Rodriguez in his bed, feigning sleep. Spellacy then discovered Torres and a third suspect, Francisco Hernández, hiding behind a dresser in the same bedroom. The authorities took the three youths into custody. At that point, Rafael Rodriguez withdrew his consent. The officers honored his wish, secured the premises and proceeded to obtain a warrant. The ensuing search unearthed sundry firearms, a receipt for the purchase of firearms, Mark Rodriguez's firearms identification card, gang literature, and other incriminating material.

Investigation revealed that the appellants held positions as "warlords" in a gang known as "La Familia." The drive-by shootings occurred after a key La Familia member was attacked and the gang vowed to exact revenge. The prosecution's theory, apparently credited by the jury, was that the appellants shot two innocent teenagers in the mistaken belief that they were members of a rival gang.

These appeals present no close questions. The appellants try; they raise a multitude of arguments, but all of them are bootless. We discuss briefly six prominently featured points. The appellants' other plaints require no comment, and we reject them out of hand.

■ 1. *Sufficiency of the Evidence.* Torres contests the sufficiency of the evidence on both the weapons offenses and the RICO-related charges. Faced with such a challenge, we assay the evidence in the light most amiable to the government, draw all reasonable inferences in its favor, and determine whether, so viewed, a rational factfinder could conclude, beyond a reasonable doubt, that the government proved the essential elements of each offense. *See United States v. Hernandez,* 146 F.3d 30, 32 (1st Cir.1998); *United States v. Olbres,* 61 F.3d 967, 970 (1st Cir.1995). Measured against this benchmark, Torres' insufficiency challenge is patently frivolous insofar as it is addressed to the weapons offenses. *See, e.g., Muscarello v. United States,* — U.S. —, —, 118 S.Ct. 1911, 1918, 141 L.Ed.2d 111 (1998); *Bailey v. United States,* 516 U.S. 137, 148, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); *United States v. Valle,* 72 F.3d 210, 217 (1st Cir.1995).

■ As to the RICO-related charges, the challenge is only marginally more robust. To convict on the substantive RICO offenses under the instructions presented to the jury, the government had to prove that La Familia qualified as an enterprise engaged in racketeering activity; that Torres held a position in it; and that he committed (or aided and abetted the commission of) the violent crimes described in the indictment in order to main-

tain or increase his position in the enterprise. *See United States v. Fiel,* 35 F.3d 997, 1003 (4th Cir.1994); *United States v. Vasquez–Velasco,* 15 F.3d 833, 842 (9th Cir.1994); *see also* 18 U.S.C. § 1959(a). Torres' insufficiency challenge targets the last two elements, namely, whether he committed the crimes of violence and whether he did so to further his standing in the gang.

■ Torres' protests are unavailing. As to whether he participated in the shootings, the testimony of Wanda Rodriguez, a government witness, is little less than damning. Apparently recognizing this problem, Torres argues that her testimony was incredible. As a general rule, however, credibility determinations are for the jury, not for an appellate court. *See United States v. O'Brien,* 14 F.3d 703, 707 (1st Cir.1994). That rule indubitably applies to claims of evidentiary insufficiency. *See United States v. Woodward,* 149 F.3d 46, 56 (1st Cir.1998) (holding that, on such a challenge, an appellate court will. not weigh the credibility of witnesses). Its application here frustrates Torres' effort to undermine the jury verdict. Nor does Wanda Rodriguez's testimony stand alone. It was corroborated by, *inter alia,* Mark Rodriguez's admission (in Torres' presence) to a fellow gang member, compelling ballistics evidence, and abundant circumstantial proof.

■ As to the final element of the offense, Torres' argument founders on our recent decision in *United States v. Tse,* 135 F.3d 200 (1st Cir.1998), in which we held that the government can satisfy this element of a RICO conspiracy charge by showing merely that the defendant committed the crime because it was expected of him by virtue of his membership in the enterprise. *See id.* at 206. The proof at trial comfortably cleared this hurdle.

■ *2. The Pinkerton Instruction.* Torres claims that the trial court erred in instructing the jury on the doctrine limned in *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). In general,

a *Pinkerton* instruction exposes a coconspirator to criminal liability for substantive crimes committed in the course of the conspiracy, regardless of whether he or some other coconspirator actually perpetrated the crimes. *See United States v. Sanchez,* 917 F.2d 607, 612 (1st Cir.1990). A *Pinkerton* instruction is appropriate if the evidence is sufficient to prove the charged conspiracy and to link the substantive offenses to it. *See Tse,* 135 F.3d at 207. The evidence just summarized meets this benchmark. Hence, it defeats Torres' claim that the trial court lacked an evidentiary basis for giving a *Pinkerton* instruction.

*3. The Search.* The appellants argue in unison that the district court should have suppressed the inculpatory evidence seized from Rafael Rodriguez's apartment. Despite their united front, we treat their arguments separately.

■ As to Torres, this claim is easily dispatched. Torres was nothing more than a casual visitor in the apartment, and, as such, had no reasonable expectation of privacy there. *See United States v. Gale,* 136 F.3d 192, 195 (D.C.Cir.1998); *Terry v. Martin,* 120 F.3d 661, 663 (7th Cir.1997); *United States v. Maddox,* 944 F.2d 1223, 1234 (6th Cir.1991); *United States v. Grandstaff,* 813 F.2d 1353, 1357 (9th Cir.1987). Since Fourth Amendment rights are personal to each defendant and may not be asserted vicariously, *see United States v. Padilla,* 508 U.S. 77, 81–82, 113 S.Ct. 1936, 123 L.Ed.2d 635 (1993); *Rakas v. Illinois,* 439 U.S. 128, 130 n. 1, 133–34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), Torres' failure to demonstrate his own legitimate expectation of privacy in the premises renders the exclusionary rule unavailable to him.[1]

■ Mark Rodriguez's claim rests on different footing. Because he resided in the apartment, the search implicated his Fourth Amendment rights. Be that as it may, Rodriguez is endeavoring to change horses in midstream. In the district court, he argued

---

1. To be sure, a person may have an interest in residential premises other than his own abode sufficient to warrant Fourth Amendment protection. *See Minnesota v. Olson,* 495 U.S. 91, 98–99, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); *Ra-*

*kas,* 439 U.S. at 142, 99 S.Ct. 421. Here, however, the record indicates that Torres was a casual visitor to the apartment—nothing more—and, thus, not entitled to a legitimate expectation of privacy.

unsuccessfully that the officers' coercive manner, in combination with his father's second-grade education, limited English language skills, and inebriated state, rendered the consent involuntary. In this venue, he scraps this theorem and maintains instead that a parent does not have authority to consent to a search of an adult child's bedroom within the family's domicile.

We need not consider this asseveration on the merits. A litigant cannot jump from theory to theory like a bee buzzing from flower to flower. To the precise contrary, when a party fails to raise a theory at the district court level, that theory is generally regarded as forfeited and cannot be advanced on appeal. *See United States v. Slade*, 980 F.2d 27, 30 (1st Cir.1992) ("It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals."). So it is here.

In this case, moreover, the forfeiture is double-barreled. Fed.R.Crim.P. 12(b)(3) requires a defendant to file suppression motions prior to trial, and Fed.R.Crim.P. 12(f) declares that failure to do so constitutes a waiver. This waiver provision applies not only when a defendant has failed altogether to make a suppression motion but also when, having made one, he has neglected to include the particular ground that he later seeks to argue. *See United States v. Meraz–Peru*, 24 F.3d 1197, 1198 (10th Cir.1994); *United States v. Restrepo–Rua*, 815 F.2d 1327, 1329 (9th Cir.1987). Because these twin forfeitures cannot be overlooked, Mark Rodriguez's challenge to the search cannot succeed.[2]

**4. *Ineffective Assistance of Counsel.*** In a related vein, Mark Rodriguez urges in his reply brief that these forfeitures supply strong evidence of his trial counsel's ineptitude. On this basis, he asserts that his Sixth Amendment right to effective counsel

has been compromised. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1994); *Scarpa v. DuBois*, 38 F.3d 1, 8 (1st Cir.1994). This argument, too, is procedurally defaulted.

For one thing, issues raised for the first time in an appellant's reply brief are generally deemed waived. *See United States v. Brennan*, 994 F.2d 918, 922 n. 7 (1st Cir.1993) (remarking the "well settled" rule that legal arguments made for the first time in an appellant's reply brief are tardy and will not ordinarily be considered); *Sandstrom v. ChemLawn Corp.*, 904 F.2d 83, 86 (1st Cir.1990) (similar). We see no reason to relax this salutary rule in the circumstances at hand.

For another thing, ineffective assistance claims, by and large, may not be raised on direct appeal if they have not seasonably been advanced in the district court. *See United States v. Mala*, 7 F.3d 1058, 1063 (1st Cir.1993). While this praxis admits of an occasional exception, *see, e.g., United States v. Natanel*, 938 F.2d 302, 309 (1st Cir.1991), the case at bar entails no exceptional circumstances,[3] and, thus, falls comfortably within the sweep of the general rule.

**5. *Variance.*** The appellants asseverate that a material variance existed between certain charges lodged in the indictment and the government's proof at trial. Specifically, they note that the indictment named Bellevue and Scott as victims, but the evidence showed that Bellevue and Gambora (not Scott) were wounded. "We afford plenary review to the question of whether an asserted variance requires retrial." *United States v. Arcadipane*, 41 F.3d 1, 6 (1st Cir. 1994).

A variance occurs when the facts at trial diverge from those alleged in the indictment. *See United States v. Marrero–*

---

2. While plain error review sometimes may pertain in this sort of situation, that doctrine has no applicability where, as here, the defendant has failed to develop the necessary factual record undergirding a particular suppression claim. *See United States v. Nunez*, 19 F.3d 719, 723 n. 10 (1st Cir.1994).

3. Indeed, because the circumstances here suggest that Mark Rodriguez's trial counsel may have made a plausible strategic choice, it would be wholly inappropriate to consider the ineffective assistance claim in the absence of a suitably developed factual record.

*Ortiz,* 160 F.3d 768, 773 (1st Cir.1998). However, not every variance demands redress. *See id.* A variance justifies relief only if the "disparity is material and affects [the] defendant's substantial rights." *Id.; see also United States v. Tormos–Vega,* 959 F.2d 1103, 1115 (1st Cir.1992).

Under this standard, the instant discrepancy between the indictment and the proof does not warrant vacation of the judgment. Although the indictment identified Scott, rather than Gambora, as the second shooting victim, that Bellevue in no way affected the defendants' foreknowledge of the charges lodged against them or their ability to prepare a defense. Consequently, the variance did not impair the defendants' substantial rights.[4]

■ **6.** ***The Mistrial Motion.*** During the trial, Jesus Gambora testified that he had previously identified Torres in a photo spread. This testimony was erroneous. Torres promptly objected and moved for a mistrial. The district court denied the motion, but struck the comment and gave an immediate curative instruction. The appellants now argue that the lower court should have declared a mistrial. We think not.

■ We review a district court's refusal to declare a mistrial for manifest abuse of discretion and will uphold the court's ruling unless the movant demonstrates a clear showing of prejudice. *See United States v. Rullan–Rivera,* 60 F.3d 16, 18 (1st Cir.1995); *United States v. Sepulveda,* 15 F.3d 1161, 1184 (1st Cir.1993). Where, as here, a curative instruction is promptly given, a mistrial is warranted only in rare circumstances implying extreme prejudice. *See United States v. Pierro,* 32 F.3d 611, 617 (1st Cir.1994).

■ In this instance, several factors point to upholding the district court's ukase. First, Torres does not suggest any way in which the curative instruction could have been improved, and he did not contemporaneously object to its content. Second, in view of the trial testimony, the witness's misstatement was not particularly consequential. Jurors are presumed to follow the

trial judge's instructions, *see Sepulveda,* 15 F.3d at 1185, and that presumption has not been rebutted here.

We need go no further. Having reviewed the record with care, we are fully satisfied that the defendants were fairly tried and justly convicted.

*Affirmed.*

---

4. It is noteworthy that when pressed at oral argument in this court, Rodriguez's counsel could not identify *any* prejudice that occurred as a result of the asserted variance.