# United States Court of Appeals
## For the First Circuit

No. 06-1451

UNITED STATES,

Appellee,

v.

GARY H. REINER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Circuit Judge,

John R. Gibson, Senior Circuit Judge[*]

and Howard, Circuit Judge.

James E. McCall was on brief for appellant.
F. Mark Terison, Senior Litigation Counsel, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

August 20, 2007

---

[*]Of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

**JOHN R. GIBSON**, **Circuit Judge**.  Gary H. Reiner appeals his four count conviction for interstate travel to promote prostitution, 18 U.S.C. § 1952 (the Travel Act); inducement to interstate travel to engage in prostitution, 18 U.S.C. § 2422(a) (the Mann Act); conspiracy to violate the Travel Act and the Mann Act, 18 U.S.C. § 371; and conspiracy to launder money, 18 U.S.C. §§ 1956(h) and 1957.  Reiner argues that (1) the district court erred in refusing to hold a Franks[1] hearing concerning omissions in the affidavit supporting the search warrant; (2) the district court erred in denying Reiner's motion for a mistrial following prejudicial testimony; (3) the district court miscalculated Reiner's base offense level under the sentencing guidelines; and (4) the district court erred in ordering forfeiture.  We affirm.

Reiner was the attorney for Kittery Health Club, Inc., doing business as The Danish Health Club, Inc. ("DHC"), in Kittery, Maine.  The DHC advertised itself as a massage parlor for men, but in reality it offered sexual services in exchange for money. Reiner performed legal services for the DHC's original owner, Leo Manzoli, dating back to 1990.  Leo Manzoli died in 1996, and Joel Lehrer, a business associate of his, took over the day to day operations of the DHC.  Following Leo Manzoli's death, his wife, Mary Ann Manzoli ("Manzoli"), also took a more active role in the business.  Joel Lehrer died in 2001, and some time thereafter

---

[1]Franks v. Delaware, 438 U.S. 154 (1978).

Reiner became a co-trustee of K & D Realty Trust, which owned the property used by the DHC. Susan Lehrer, Joel Lehrer's widow, began to run the DHC in 2001, but was later relieved of her responsibilities by Reiner. Reiner then ran the DHC between 2001 and 2004. In 2001, Reiner hired Russell Pallas, a former police officer, to manage the front desk, and Reiner filled in for Pallas on occasion. Reiner was responsible for all personnel decisions concerning the female masseuses and handled the financial aspects of the business. In late 2003 and early 2004, the DHC ran advertisements in Xtreme Magazine, an adult periodical, and in the adult section of two alternative newspapers, the Portland Phoenix and the Boston Phoenix. Reiner was responsible for the content of the advertisements.

On June 9, 2004, authorities executed a search warrant at the DHC. Rodney Giguere, a Special Agent with the Internal Revenue Service, prepared a thirty-five page affidavit in support of the search warrant. The affidavit relied upon (1) police reports and reports by the Federal Bureau of Investigation detailing investigations of the club; (2) statements by several confidential witnesses concerning occurrences of prostitution at the DHC; (3) the adult advertisements placed by Reiner; (4) an internet search by another IRS agent that revealed detailed descriptions of sexual encounters at the DHC; and (4) reports as well as a first-hand account of extensive visual surveillance conducted by the FBI.

During the search authorities found numerous condoms located throughout the club. They also found a customer of the club on a massage table wearing a condom and a towel.

A grand jury indicted Reiner on April 27, 2005. Reiner filed a motion to suppress, which the district court denied. United States v. Reiner, 382 F. Supp. 2d 195 (D. Me. 2005). At Reiner's trial, the jury heard testimony from Pallas, who testified pursuant to a plea agreement with the government. At one point during his testimony, when asked about surveillance at the DHC, Pallas stated that he recalled a particular conversation with Reiner in which Reiner explained that he had learned of the surveillance by the FBI; it was apparently based upon complaints of under-age girls at the club. The defense objected immediately to Pallas's testimony and moved for a mistrial, which the district court denied. The district court instead struck the testimony from the record and gave a curative instruction. On September 30, 2005, the jury returned guilty verdicts.

In its presentence report, the probation office calculated a base offense level of nineteen. Reiner's violations provide for an original base offense level of fourteen under U.S.S.G. § 2G1.1(a), with a five level increase pursuant to U.S.S.G. § 2G1.1(d)(1) since the offense involved multiple victims. The presentence report calculated a total offense level of twenty-eight and a criminal history category of I, resulting in a

guidelines range for imprisonment of seventy-eight to ninety-seven months.

At his sentencing hearing, Reiner did not object to the presentence report's adjustment for multiple victims, but did object to its adjustments for Reiner's leadership role in the organization, the involvement of a minor, and obstruction of justice for false testimony. Reiner also objected to the presentence report's asset calculation. The district court rejected the presentence report's adjustments for the involvement of a minor and for false testimony, resulting in a total offense level of twenty-four and a subsequent guideline range of fifty-one to sixty-three months. The district court sentenced Reiner to sixty months' imprisonment. The district court also determined that Reiner was responsible for $3,927,392.40 in proceeds to the DHC from the illegal activity described in counts I and II. On March 2, 2006, the district court ordered forfeiture in the amount of $3,927,392.40 as a money judgment. Reiner now brings the present appeal.

I.

Reiner argues that the district court violated his Fourth Amendment rights by refusing to hold a <u>Franks</u> hearing and denying his motion to suppress evidence seized during the search of the DHC.

We review the denial of a <u>Franks</u> hearing for clear error.

United States v. Nelson-Rodriquez, 319 F.3d 12, 34 (1st Cir. 2003).

A defendant is entitled to an evidentiary hearing under Franks where the defendant "makes a substantial preliminary showing" that both (1) "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and (2) "the allegedly false statement is necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 155-56 (1978). Omission of a material fact from the affidavit supporting a warrant is sufficient to trigger a Franks hearing. United States v. Castillo, 287 F.3d 21, 25 (1st Cir. 2002). In the case of an omission, "suppression should be ordered only if the warrant application, . . . clarified by disclosure of previously withheld material, no longer demonstrates probable cause." United States v. Stewart, 337 F.3d 103, 105 (1st Cir. 2003). Therefore, Reiner must make "a substantial preliminary showing" that, considering the previously withheld material, Giguere's affidavit fails to demonstrate probable cause, Franks, 438 U.S. at 155-56, and that the district court's denial of his motion was clearly erroneous.

Reiner claims, and the government concedes, that Giguere's affidavit omitted decades-old information concerning previous investigations of the DHC by authorities. Specifically, Giguere's affidavit neglected to explain that previous investigations occurring in the 1980s and 1990s failed to result in

-6-

any prosecution or conviction of individuals associated with the DHC. Contrary to Reiner's argument, however, the previously withheld information does nothing to alter whether Giguere's affidavit demonstrates probable cause. The district court, because of concerns regarding staleness, examined "whether probable cause existed by looking primarily at the most recent relevant information and then the other information in the context of the contemporaneous information." United States v. Reiner, 382 F. Supp. 2d 195, 197-98 (D. Me. 2005). The district court, therefore, relied primarily on the adult advertisements run by the DHC in 2003 and 2004, statements by confidential informants, the extensive cash deposits by the DHC through 2003, and the interstate nature of the DHC's business in its determination that probable cause existed. Thus, the omitted information was irrelevant, and the district court did not commit clear error in refraining from ordering a Franks hearing on the basis of such information. See United States v. Rivera-Rosario, 300 F.3d 1, 20 (1st Cir. 1986) (holding that because the information omitted from the affidavit "was immaterial to the investigation," there was no error in denying defendant's motion for a Franks hearing).

Ironically, after contending that the affidavit was misleading for failing to include material from the 1980s and 1990s, Reiner next argues that the information contained in the affidavit was stale and therefore could not support a showing of

probable cause. Specifically, Reiner attacks the district court's reliance upon information from confidential informants detailing activity at the DHC between 2000 and 2002, which he claims is too old.

Probable cause to issue a search warrant exists when "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "In determining the sufficiency of an affidavit supporting a search warrant, we consider whether the 'totality of the circumstances' stated in the affidavit demonstrates probable cause to search the premises." United States v. Beckett, 321 F.3d 26, 31 (1st Cir. 2003). Factors to be considered in determining whether an affidavit is stale include "the nature of the criminal activity under investigation and the nature of what is being sought." United States v. Dauphinee, 538 F.2d 1, 5 (1st Cir. 1976).

In this case, especially in light of the nature of the criminal activity and the contraband sought, the affidavit did not suffer from staleness. Illicit prostitution operating under the guise of a legal and long-running business is precisely the type of criminal enterprise that would most likely be unchanged over the course of several years. Evidence cited by the affidavit that was two to three years old was overwhelming in this case and more than

sufficient to establish probable cause.  The information provided by confidential informants concerning illicit activity at the club between 2000 and 2002, corroboration of such activity through surveillance, an online description in 2000 of prostitution, extensive cash deposits through 2003, and the placement of adult advertising in 2003 and 2004 are all consistent with a prostitution ring of long duration.  While "no hard and fast rule can be formulated as to what constitutes excessive remoteness," id., we conclude that the district court was correct in disregarding investigations by authorities dating from the 1980s and 1990s, and instead relying on the more recent evidence submitted in the affidavit.

II.

Next, Reiner argues that the district court erred in denying his motion for a mistrial following Pallas's statement regarding suspicions by authorities of under-age girls at the DHC. We review the denial of a motion for mistrial for an abuse of discretion.  United States v. Flecha-Maldonado, 373 F.3d 170, 177 (1st Cir. 2004).  As is the case here, whenever "a curative instruction is promptly given, a mistrial is warranted only in rare circumstances implying extreme prejudice."  United States v. Torres, 162 F.3d 6, 12 (1st Cir. 1998).

Reiner contends that the testimony offered by Pallas was especially prejudicial in light of information given by juror

nineteen.  During voir dire, juror nineteen disclosed that she was close to two individuals who had suffered from sexual abuse.  When asked whether her experiences would affect her impartiality, she stated the following:

> I can tell you [that with] prostitution I have a clean slate, but with the sexual abuse, I don't know if it would bring up emotions that I hadn't planned on . . . . It might very well cause a problem just in the fact that it will stir up old emotions, feelings, and thoughts that have been laying [sic] there for a long time.

Reiner cites two cases in his argument that Pallas's statement was so inflammatory that a mistrial was warranted even in light of the curative instruction given by the district court. First, Reiner relies on United States v. Fulmer, 108 F.3d 1486, 1497-98 (1st Cir. 1997), where we held that admission of statements by an FBI agent as well as the prosecutor concerning the Oklahoma City bombing constituted reversible error because the bombing was unrelated to the defendant's alleged conduct.  Second, Reiner relies on United States v. Lehder-Rivas, 955 F.2d 1510 (11th Cir. 1992).  In that case, the court held that admission of evidence that the defendant planned to mark packages of cocaine with swastikas constituted an abuse of discretion. Id. at 1518.  The court, however, then held that the swastika testimony was harmless beyond a reasonable doubt. Id. at 1518-19.

Even considering juror nineteen's answers at voir dire, neither of these cases provides much support for Reiner's contention that the district court erred in refusing to declare a

-10-

mistrial. Both cases involved extensive testimony of a highly inflammatory nature that was only tangentially related to the charges faced by the defendants. As well, in neither case did the district court strike the testimony or give a curative instruction. In this case, however, Pallas testified to one statement Reiner allegedly made that authorities suspected there were under-age girls at the DHC, which the district court immediately struck. There is no reason to believe that an isolated comment by Pallas about under-age girls constitutes the kind of "extreme prejudice," Torres, 162 F.3d at 12, that would warrant a mistrial. The district court gave an appropriate and prompt curative instruction, which we presume all jurors will follow. See United States v. Sepulveda, 15 F.3d 1161, 1185 (1st Cir. 1993). Reiner has not rebutted that presumption, and we conclude that the district court did not abuse its discretion in denying his motion for a mistrial.

### III.

Reiner raises two issues concerning his sentence. First, Reiner contests the district court's calculation of his base offense level. Because Reiner did not previously object to the district court's calculation of multiple victims, we review the district court's finding for plain error. See United States v. Terry, 240 F.3d 65, 72-73 (1st Cir. 2001).

Reiner cites United States v. Camuti, 950 F.2d 72 (1st Cir. 1991), to argue that because there was no evidence that Reiner

himself transported any of the victims at the DHC, the five-level increase to his base offense level is clearly erroneous. This argument is without merit. In Camuti, we held that providing motivation for travel was insufficient to constitute an offense involving the transportation of an individual, and therefore insufficient to trigger the sentencing enhancement provided by U.S.S.G. § 2G1.1(c) (1990). 950 F.2d at 77. Reiner's case, however, is governed by the 2005 edition of the United States Sentencing Guidelines Manual; considering the differences between the two editions, the decision in Camuti is inapposite.[2]

In this case, Reiner should have received an enhancement under the guidelines if "the offense involved more than one victim." U.S.S.G. § 2G1.1(d) (2005). The commentary explains that for the purpose of calculating multiple victims, "each person transported, persuaded, induced, enticed, or coerced to engage in, or travel to engage in, a commercial sex act or prohibited sexual conduct is to be treated as a separate victim." U.S.S.G. § 2G1.1, cmt. n.5 (emphasis added). Reviewing the evidence, we conclude that the district court did not commit plain error in determining that the offense involved five or more victims. Reiner ran the

---

[2]Typically, a sentencing court must use the edition of the guidelines manual effective on the date of sentencing. See United States v. Harotunian, 920 F.2d 1040, 1041-42 (1st Cir. 1990) ("Barring any ex post facto problem, a defendant is to be punished according to the guidelines in effect at the time of sentencing."); U.S.S.G. § 1B1.11.

DHC, and there is ample evidence that most of the women involved in the DHC either traveled or were transported, persuaded, induced, or enticed for the purpose of engaging in a commercial sex act.[3]

Second, Reiner offers several arguments as to why his sentence is unreasonable. First, he argues that, although his sentence is within the guideline range, it is nevertheless unreasonable because the district court failed to consider Reiner's obligations to his family as well as his history as an "exceptional person." Under United States v. Booker, 543 U.S. 220, 245-46, 259-60 (2005), the district judge may adopt a non-guideline sentence where appropriate in consideration of 18 U.S.C. § 3553(a) (2000). Assuming that such factors are properly understood, our review of the district court's judgment is deferential. See United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc), cert. denied, 127 S. Ct. 928 (2007).

In this case, the district court noted all of the relevant circumstances concerning Reiner and his family. He observed that Reiner's family "has confronted severe medical issues." He also noted that "[i]t's a sad day when a pillar of the community is sent to prison." The district court nevertheless

---

[3]Reiner also contests the district court's conclusion regarding his leadership role in the DHC. In light of Reiner's extensive involvement with the DHC detailed thus far, we conclude that the district court's determination was not clear error, see United States v. Ventura, 353 F.3d 84, 89 (1st Cir. 2003), and Reiner's argument is wholly without merit.

chose to sentence Reiner to sixty months' imprisonment, stating that such a sentence was necessary to achieve the objectives set forth in 18 U.S.C. § 3553(a)(2)(A). Where, as here, there is "a plausible explanation and a defensible overall result," we normally respect the judgment of the district court as to whether to go outside of the guidelines. Jiménez-Beltre, 440 F.3d at 519. Considering all of the circumstances surrounding Reiner's case, including his familial responsibilities and his previous history as an upstanding citizen, we see no basis for disturbing the district court's judgment.[4]

Reiner also argues that the district court's sentence is unreasonable due to an unwarranted sentence disparity in light of the six month sentence received by Pallas and the five years of probation received by Manzoli. As Reiner acknowledges, however, we have stated before that "the aim [of reducing unwarranted disparity] was almost certainly a national uniformity focusing upon a common standard." United States v. Saez, 444 F.3d 15, 18 (1st Cir.) (emphasis in original), cert. denied, 127 S. Ct. 224 (2006).

Also problematic for Reiner is that, as the district court noted, both Manzoli and Pallas accepted responsibility for what they had done and then cooperated with the government.

---

[4]Reiner also argues that the district court erred in refusing to depart downward pursuant to U.S.S.G. § 5H1.6. Such a refusal to depart, however, is not ordinarily reviewable by this court absent a mistake of law. United States v. Melendez-Torres, 420 F.3d 45, 50-51 (1st Cir. 2005).

-14-

Reiner, however, asserted both at trial and at his sentencing hearing that he was not guilty of the charges against him. Reiner cites our decision in United States v. Thurston, 456 F.3d 211 (1st Cir. 2006), petition for cert. filed, No. 06-378 (Sept. 14, 2006), to argue that he is still similarly situated to Pallas and Manzoli, but his reliance is misplaced. In Thurston, we specifically noted that a defendant who chooses to enter into a plea bargain is not similarly situated to a defendant who contests the charges. Id. at 216-17. It is therefore not the case that the district court was "required to reduce [the appellant's] sentence simply because he—unlike the other defendants—chose to go to trial." United States v. Navedo-Concepción, 450 F.3d 54, 60 (1st Cir. 2006).

Reiner argues that the district court's sentence violated the parsimony principle—the statutory directive that sentences ought to be no higher than is necessary to achieve the objectives of sentencing. We have held before that it is "the rare case in which a within-the-range sentence can be found to transgress the parsimony principle." United States v. Turbides-Leonardo, 468 F.3d 34, 41 (1st Cir. 2006), cert. denied, 127 S. Ct. 3064 (2007). Upon review of the sentencing transcript, it is evident that the district court was careful in fashioning an appropriate sentence. There is no basis for concluding that Reiner's sentence violates the parsimony principle or is otherwise unreasonable.

IV.

Finally, Reiner contests the forfeiture award ordered by the district court.  We review questions of law de novo, but we review mixed questions of fact and law for clear error.  See United States v. Ferrario-Pozzi, 368 F.3d 5, 8 (1st Cir. 2004).

Our analysis of Reiner's claim need not detain us long.  First, Reiner urges us to reconsider our holding in United States v. Hurley, 63 F.3d 1 (1st Cir. 1995).  In that case, we held that the principle of finding members of a conspiracy substantively liable for the foreseeable conduct of other members of the conspiracy extended to forfeiture rules.  Id. at 22.  Reiner argues that the district court erred by ordering him to pay the full value of the DHC's proceeds when he never used or personally possessed the money.  However, regardless of the merits of Reiner's argument that holding him vicariously liable for the total amount of the conspiracy's windfall is unfair, we are bound by our decision in Hurley.  See United States v. Malouf, 466 F.3d 21, 26 (1st Cir. 2006) (noting that, except for circumstances not present here, "newly constituted panels are bound by decisions of prior panels in the same circuit"), cert. denied, 127 S. Ct. 1892 (2007).

Reiner also contests the district court's determination that all of the DHC's proceeds were subject to forfeiture because the entire enterprise functioned as nothing more than a front for illegal prostitution.  Reviewing the record, we conclude that the

district court's determination regarding the nature of the DHC is not clearly erroneous. The sole purpose of the DHC was prostitution, and income derived from activities designed to conceal the illegal nature of the enterprise are appropriately subject to forfeiture.

## V.

We affirm the judgment of the district court in all respects.