NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 14, 2011
Decided February 16, 2012

**Before**

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 11-1568

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 09 CR 627 |
| ANTHONY BARCELO, *Defendant-Appellant.* | Joan B. Gottschall, *Judge.* |

**O R D E R**

Anthony Barcelo pleaded guilty to conspiring to possess and possessing cocaine with the intent to distribute, 21 U.S.C. §§ 841(a)(1), 846, and was sentenced below his guidelines range to 70 months' imprisonment. On appeal he contends only that the district court erred when determining his sentence by not considering his efforts to cooperate with the government. Because the sentencing record shows that the court implicitly considered Barcelo's efforts to cooperate, we affirm the judgment.

Barcelo agreed to sell two kilograms of cocaine for $54,000 to a person who was a cooperating source for the government; he agreed to meet the source at a Berwyn motel to complete the transaction. Barcelo's co-conspirators met him at the motel and handed him a package containing roughly two kilograms of cocaine. Barcelo took the cocaine into the

room of the awaiting source but tossed it out the window upon hearing police in the parking lot. He was arrested and later indicted with conspiring to possess and possessing cocaine with the intent to distribute.

After being indicted, Barcelo submitted to two interviews with the government, at which he admitted to conspiring with his supplier to sell drugs and acknowledged distributing more than 40 kilograms of cocaine over five years. Barcelo told the court he participated in these interviews because he wanted to cooperate with the government and negotiate a plea bargain. He understood these interviews to be proffer-protected (such that his disclosures about his relevant conduct would not be used against him at sentencing). The government, however, told the court that Barcelo did not provide "full and complete information" during these interviews, which the government maintained were not proffer-protected but rather conducted solely to determine whether he qualified for the "safety-valve" adjustment under U.S.S.G. § 5C1.2. (He was ineligible for that reduction because he had more than one criminal history point.)

Barcelo's meetings with the government did not result in a plea agreement, and he later entered a blind plea of guilty on both counts of the indictment. In his plea declaration, Barcelo asserted that he had provided "truthful and complete cooperation" to the government and would continue to do so, but noted that he did not expect the government to move for a reduced sentence under U.S.S.G. § 5K1.1 (authorizing downward adjustments for a defendant's assistance in the prosecution or investigation of other persons) due to the "contested nature" of the plea. Nonetheless he asked the district court to "consider the substantial assistance he has provided to the government" and impose a below-guidelines sentence.

At sentencing, defense counsel urged the district court to impose the statutory mandatory minimum of 60 months' imprisonment in light of Barcelo's history and characteristics, including his advancing age (60 years old), consistent work history as a mechanic, criminal past consisting of convictions that were only misdemeanors, and attempted cooperation with the government. Concerning the cooperation, counsel stressed that Barcelo provided information about himself and other offenders and made a "significant attempt" to cooperate. The government, which did not move for a reduced sentence under § 5K1.1, countered that "there was no cooperation" because Barcelo spoke to the government "with the intent of receiving a benefit for purely sentencing purposes." The government emphasized that Barcelo did not even disclose the name of his narcotics supplier. While listening to these arguments about Barcelo's cooperation, the court commended Barcelo for his "acceptance of responsibility."

The district court sentenced Barcelo to 70 months' imprisonment. In doing so, the court accepted the parties' proposed guidelines range of 78 to 97 months (reflecting a base offense level of 30, a three-level downward adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), (b), and a Category II criminal history). The court then opted to give Barcelo "a little downtick in his [total] offense level," reducing that level to 26 because it believed Barcelo unlikely to reoffend; this discretionary "downtick" yielded a range of 70 to 87 months. In weighing Barcelo's history and characteristics under 18 U.S.C. § 3553(a), the court stressed that his drug offenses were "really unnecessary" in light of his stable work history as a mechanic. The court also discussed the nature and circumstances of the offenses, noting the large quantities of drugs that Barcelo sold and the negative effect of large-scale drug sales on the community. In light of these factors, the court deemed inappropriate the 60-month statutory mandatory minimum sentence and determined that 70 months was not longer than necessary to achieve the purposes of § 3553(a).

On appeal Barcelo argues only that the district court abused its discretion in sentencing him without regard to his attempted cooperation with the government. *See generally United States v. Knox*, 573 F.3d 441, 453 (7th Cir. 2009) ("[A] district court may consider a defendant's cooperation with the government as a basis for a reduced sentence, even if the government has not made a § 5K1.1 motion.").

A sentencing judge "must adequately explain the chosen sentence to allow for meaningful appellate review," *Gall v. United States*, 552 U.S. 38, 50 (2007), and a judge "who fails to mention a ground of recognized legal merit (provided it has a factual basis) is likely to have committed an error or oversight," *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005). But so long as the totality of the sentencing record shows that the court heard and considered the argument, no procedural error occurs and the sentence will be found reasonable where the court's consideration is merely implicit. *United States v. Diekemper*, 604 F.3d 345, 355 (7th Cir. 2010); *United States v. Poetz*, 582 F.3d 835, 839 (7th Cir. 2009); *United States v. Omole*, 523 F.3d 691, 697–98 (7th Cir. 2008). A court's consideration of a sentencing argument is implicit where, during the hearing, the court asks follow-up questions about the argument, *see United States v. Carrillo-Esparza*, 590 F.3d 538, 540 (7th Cir. 2010), or "pepper[s]" its remarks with references to that argument, *see Poetz*, 582 F.3d at 839; *United States v. Gary*, 613 F.3d 706, 711 (7th Cir. 2010). Such responses to a sentencing argument are procedurally adequate even if "imprecise." *Poetz*, 582 F.3d at 839.

Although the district court did not mention Barcelo's argument about his cooperation with the government, the record shows that the court implicitly considered and accepted that argument as a basis for sentencing him below the guidelines. The court repeatedly referred to Barcelo's "acceptance of responsibility" while responding to the parties' arguments about Barcelo's efforts to cooperate. At one point the court highlighted Barcelo's acceptance of responsibility by stating, "[I]t matters to the whole issue of deterrence and rehabilitation whether somebody is keeping their lips sealed or whether

they're accepting responsibility"; Barcelo, in the court's view, "has given the government a lot of information about his responsibility." When the government acknowledged Barcelo's admitted culpability for his conduct, the court again emphasized his acceptance of responsibility, stating, "I'm considering it for 3553 purposes. I'm considering whether somebody has—you know, what indication we have that they're trying to make a clean slate of it." The government specifically invoked Barcelo's lack of cooperation, stating that Barcelo "was not overly cooperative, he did not once give us full information"; the court, however, brushed off that comment, noting that Barcelo "at least tried to talk about his criminal responsibility."

Barcelo contends in his reply brief that the district court did not implicitly consider his "attempted cooperation" because, although the court discussed acceptance of responsibility, those two concepts, he argues, "are two very different factors that warrant individual consideration and determination by the court." But those two factors are interrelated; "a defendant's cooperation, remorse, and prompt guilty plea are factored into the acceptance-of-responsibility adjustment," *United States v. Wachowiak*, 496 F.3d 744, 753 (7th Cir. 2007), *abrogated on other grounds, United States v. Bartlett*, 567 F.3d 901, 909 (7th Cir. 2009); *see United States v. Goodwin*, 486 F.3d 449, 450 (8th Cir. 2007) (affirming sentence where district court noted that defendant's "cooperation with the government had been taken into account with a three-level acceptance of responsibility reduction and a two-level safety valve reduction"). And courts sometimes treat "acceptance of responsibility" and "cooperation" as conceptually intertwined when analyzing sentencing disparities between defendants, *see, e.g., United States v. Duncan*, 479 F.3d 924, 929 (7th Cir. 2007) ("Part of the difference in the total offense levels flows from Berkey's three-level reduction for acceptance of responsibility and cooperation with the Government in its prosecution of Duncan."); *United States v. Stewart*, 628 F.3d 246, 260 (6th Cir. 2010) (upholding disparate sentences because district court "noted the coconspirators' acceptance of responsibility and/or cooperation with authorities as factors that it considered in each of their sentencings"); *United States v. Reiner*, 500 F.3d 10, 18 (1st Cir. 2007) (same).

In this case, the sentencing transcript shows that Barcelo, the government, and the district court all equated acceptance of responsibility with attempted cooperation when assessing the value of Barcelo's interviews with the government. Barcelo received the full three-level adjustment for acceptance of responsibility, U.S.S.G. § 3E1.1(a), (b), and the court gave even further weight to that factor, as it was permitted to do, *Wachowiak*, 496 F.3d at 753, by exercising its discretion to sentence him below the guidelines because it found him unlikely to reoffend. Although the court could have been more thorough by specifying the amount of cooperation it considered, its handling of Barcelo's argument was not error.

AFFIRMED.