# United States Court of Appeals
## For the First Circuit

No. 18-2133

UNITED STATES OF AMERICA,

Appellee,

v.

JOMAR HERNÁNDEZ-ROMÁN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Lynch, Selya, and Lipez,
Circuit Judges.

Jason González-Delgado on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Alexander L. Alum, Assistant United States Attorney, on brief for appellee.

December 1, 2020

**SELYA**, **Circuit Judge**.  After a lengthy trial, a jury convicted defendant-appellant Jomar Hernández-Román of armed bank robbery and related crimes.  Following the imposition of sentence, the defendant appeals.  Concluding, as we do, that he is grasping at straws, we affirm the judgment below.

## I. BACKGROUND

We sketch the relevant facts and travel of the case, taking those facts in the light most congenial with the verdict. See, e.g., United States v. Santiago, 83 F.3d 20, 23 (1st Cir. 1996); United States v. Taylor, 54 F.3d 967, 971 (1st Cir. 1995). On November 29, 2014, three armed individuals robbed a Banco Popular branch in Bayamón, Puerto Rico, making off with more than $64,000.  In an attempt to distract the authorities, they had dropped packages containing fake bombs at ATMs outside of two other banks (one at Lomas Verde and one at Bayamón City Hall).

Toward the end of the next month, the authorities detained the defendant.  While in custody, he stated that on the day of the robbery, he and a friend ran some errands and went shopping for some sneakers.  But this was not his first shopping trip:  it turned out that four days earlier, he and an alleged coconspirator, José Padilla-Galarza (Padilla), had gone to two Party City stores and a Home Depot.  In the course of this excursion, Padilla purchased various artifacts, including black gloves and fake facial hair, which a jury could reasonably have

- 2 -

concluded were used by the robbers.[1]  Video surveillance recordings from the stores' cameras corroborated these purchases.

As the interview progressed, the defendant confessed. He admitted that he had hosted multiple meetings at his home, during which the plot to rob the bank was hatched.  He also admitted that he had surveilled the bank on behalf of the conspirators; that he knew of the scheme to deploy fake bombs to divert the attention of the authorities; and that, after the robbery, he had returned a shotgun used by the robbers to Padilla.  Another witness corroborated the fact that planning meetings had taken place at the defendant's home.

In due season, a federal grand jury sitting in the District of Puerto Rico returned a five-count indictment that charged the defendant, Padilla, and three others with conspiracy to commit bank robbery (count 1), see 18 U.S.C. § 371; armed bank robbery (count 2), see id. § 2113(a); conspiracy to commit Hobbs Act robbery (counts 3 and 4), see id. § 1951(a); and using, carrying or brandishing firearms during and in relation to a crime of violence (count 5), see id. § 924(c).  Three of these five defendants entered guilty pleas, but the defendant and Padilla maintained their innocence.  After a protracted trial, the jury

_____

[1] After the robbery, the authorities recovered a matching pair of black gloves and fake facial hair when executing a search warrant at Padilla's residence.

found the defendant guilty on all counts.[2]  The district court sentenced him to serve an eighty-seven-month term of immurement. This timely appeal followed.

## II. ANALYSIS

In this venue, the defendant advances what can be grouped as two claims of error.  We address them sequentially.

### A. Sufficiency-of-the-Evidence Claims.

At the close of the government's case in chief, the defendant moved for judgment of acquittal.  See Fed. R. Crim. P. 29(a).  He argued that the government had failed to establish the interstate nexus required for the first four counts of the indictment and, in addition, had failed to prove that he "actually possessed a firearm during and in relation to a crime of violence." The district court denied his motion.

The defendant did not renew his motion for judgment of acquittal at the close of all the evidence.  See id.  Nor did he move for judgment of acquittal following the jury's verdict. See Fed. R. Crim. P. 29(c)(1).

Before us, he attempts to launch a broad-gauged series of sufficiency-of-the-evidence claims.  Specifically, he submits that the government failed to prove either that he possessed the requisite criminal intent or that he was physically present during

---

[2] The jury also found Padilla guilty on all counts, and his appeal is pending.

- 4 -

the commission of any crimes of violence. This attempt is doomed. The denial of a Rule 29(a) motion, without more, does not preserve an issue for appeal. See United States v. Maldonado-García, 446 F.3d 227, 230 (1st Cir. 2006); United States v. Hadfield, 918 F.2d 987, 996 (1st Cir. 1990). Here, there was no "more": the defendant's failure to move for judgment of acquittal either at the close of all the evidence or after the verdict was returned results in a waiver. See Maldonado-García, 446 F.3d at 230. Given the absence of a timely Rule 29 (b) or (c) motion, an appellate court may not intercede except to prevent a clear or gross injustice. See United States v. Tkhilaishvili, 926 F.3d 1, 18 (1st Cir. 2019); Taylor, 54 F.3d at 975.

There is no hint of any clear or gross injustice here. After all, it is common ground that there can be no clear and gross injustice if the evidence, scrutinized in the light most congenial with the verdict, can support a finding of guilt beyond a reasonable doubt. See Taylor, 54 F.3d at 974. The evidence in this case easily clears so low a bar. We explain briefly.

To sustain a conviction for conspiracy under 18 U.S.C. § 371, "the government must furnish sufficient evidence of three essential elements: an agreement, the unlawful objective of the agreement, and an overt act in furtherance of the agreement." United States v. Hurley, 957 F.2d 1, 4 (1st Cir. 1992). So, too, the government must furnish sufficient evidence of "the knowing

participation of each defendant in [the] conspiracy." United States v. Mubayyid, 658 F.3d 35, 57 (1st Cir. 2011). The government's proof may be either direct or circumstantial. See United States v. Floyd, 740 F.3d 22, 28 (1st Cir. 2014); United States v. Piper, 298 F.3d 47, 59 (1st Cir. 2002).

In the case at hand, the defendant admitted to hosting meetings at his home, during which the robbery was planned. He also admitted that he participated in surveilling the bank and that he delivered a shotgun that had been used in the robbery to one of his confederates. What is more, he admitted that he knew about the scheme to deploy fake bombs — and he even supplied the authorities with a diagram of the fake bombs. To cinch the matter, another of the charged coconspirators (Miguel Torres-Santiago) provided testimony that directly implicated the defendant as a member of the conspiracy. Assaying this evidence in light of the government-friendly standard of review, it was more than sufficient to sustain the defendant's conviction as to count one.

Nor need we linger long over the defendant's importuning that the evidence was insufficient as to count two because he "simply did not participate in the bank robbery." The statute of conviction provides, in relevant part, that "[w]hoever, by force and violence, or by intimidation, takes, or attempts to take, . . . any property or money or any other thing of value belonging to . . . any bank," and who, in committing or attempting to commit

such an offense, "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device," commits the offense of armed bank robbery. 18 U.S.C. § 2113(a), (d). At first blush, the evidence of each of these elements seems ample.

The defendant demurs, saying that he did not participate in the robbery and that "none of the government witnesses who participated in this robbery could put [him] inside the bank." But the defendant is setting up a straw man: to convict the defendant under count two, the government was under no obligation to prove that he was physically present at the scene of the robbery. To the contrary, it is well-established that, by virtue of the jury's guilty verdict as to the conspiracy charged in count one, the defendant became substantively liable for the foreseeable acts of his coconspirators in furtherance of the conspiracy — including, in this case, the armed bank robbery. See Pinkerton v. United States, 328 U.S. 640, 647 (1946). As we have said, "a Pinkerton instruction exposes a coconspirator to criminal liability for the substantive crimes committed in the course of the conspiracy, regardless of whether he or some other coconspirator actually perpetrated the crimes." United States v. Torres, 162 F.3d 6, 10 (1st Cir. 1998). Consequently, the defendant need not have been physically present inside the bank

(or for that matter, in the vicinity of the robbery) in order to be guilty of the substantive crime of armed bank robbery.  See id.

Seen in this light, it is nose-on-the-face plain that the evidence was sufficient to enable a rational jury to conclude beyond a reasonable doubt that the defendant was a member of the bank-robbery conspiracy and, thus, liable for the substantive armed bank robbery charge.  His own words are telling:  he admitted to conducting surveillance to facilitate the robbery, to handling a shotgun used in the robbery, and to accompanying Padilla while he acquired disguises worn by the robbers.  From the defendant's admissions and other evidence in the record, a rational jury could find without difficulty that the defendant had acted in furtherance of a foreseeable robbery.  See United States v. Hurley, 63 F.3d 1, 22 (1st Cir. 1995).

The defendant also tries to attack his Hobbs Act convictions.  As relevant here, the Hobbs Act proscribes conduct that "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do."  18 U.S.C. § 1951(a).  Thus, the government was required to prove beyond a reasonable doubt both that the defendant conspired and attempted to commit robbery and that the conspiracy's actions affected interstate or international commerce.  See Tkhilaishvili, 926 F.3d at 10.

The defendant's challenge to his Hobbs Act robbery convictions falter for reasons similar to those that undermined his challenge to his bank robbery convictions. To be sure, the defendant asserts that the evidence fails to establish any actus reus on his part to employ "actual or threatened force, or violence," as required by the Hobbs Act.[3] 18 U.S.C. § 1951(b)(1). This assertion, though, misses the mark. Upon the jury's finding that the defendant was a member of the bank-robbery conspiracy, he became subject to liability for the commission of the substantive offense which — under a Pinkerton theory of liability — he could have been held to have reasonably foreseen. See Torres, 162 F.3d at 10.

This leaves the firearms count (count 5). The defendant asserts that no rational jury could have found him guilty of violating 18 U.S.C. § 924(c) because he did not physically possess any firearms during the robbery. Once again, the defendant is aiming at the wrong target.

We have held that where, as here, Pinkerton liability is in play, "the defendant does not need to have carried the gun

---

[3] On appeal, the defendant has abandoned the argument — originally advanced in his Rule 29(a) motion — that the government failed to prove a sufficient nexus with interstate commerce. And at any rate, the bank that the conspiracy targeted was federally insured, so a sufficient nexus with interstate commerce plainly existed. See United States v. Benjamin, 252 F.3d 1, 9 (1st Cir. 2001) (holding that proof of federal insurance suffices to establish "at least a minimal impact on interstate commerce").

himself to be liable under section 924(c)."  United States v. Flecha-Maldonado, 373 F.3d 170, 179 (1st Cir. 2004).  Although the defendant may not have handled a firearm during the course of the robbery, the evidence makes manifest that he knew that firearms would be used at that juncture.  Consequently, a rational jury could find — as this jury did — that the defendant was guilty of the firearms charge.

That ends this aspect of the matter.  Given the evidence of record and the reasonable inferences therefrom, we are satisfied that nothing resembling a clear and gross injustice mars the defendant's convictions.

**B. Claims Specific to the Firearms Offense.**

The defendant has another shot in his sling.  Section 924(c) provides, in relevant part, that "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . be [punished as provided]."  18 U.S.C. § 924(c)(3).  Section 924(c)(3) then furnishes alternate definitions for the term "crime of violence":  a felony that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another," (the force clause) or "(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the residual

- 10 -

clause).  Id.; see King v. United States, 965 F.3d 60, 64-65 (1st Cir. 2020).

In this instance, the defendant first challenges his conviction on the firearms count on the ground that the residual clause contained in the statutory "crime of violence" definition is unconstitutionally vague.  In support, he notes that the Supreme Court has invalidated the residual clause of the Armed Career Criminal Act (ACCA), see Johnson v. United States, 576 U.S. 591, 596-97 (2015), and the residual clause contained in a section of the Immigration and Nationalization Act (INA), see Sessions v. Dimaya, 138 S. Ct. 1204, 1216 (2018), as unconstitutionally vague.

The defendant posits that section 924(c)'s residual clause, which mimics the residual clauses of the ACCA and the INA, is also unconstitutionally vague in light of Johnson and Dimaya. The government counters that the defendant was convicted on all of the charged counts and that several of those counts involved predicate offenses (specifically, armed bank robbery and Hobbs Act robbery) that qualify as crimes of violence under section 924(c)'s force clause.  Given this circumstance, the government says, the defendant's conviction on the firearms count is unimpugnable.

Because the defendant advances this claim of error for the first time on appeal, our review is for plain error.  See United States v. Duarte, 246 F.3d 56, 57 (1st Cir. 2001).  Plain error review demands four showings:  "(1) that an error occurred

- 11 -

(2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. at 60. The proponent of plain error "must carry the devoir of persuasion as to each of these four components." United States v. Kilmartin, 944 F.3d 315, 330 (1st Cir. 2019).

We recently had occasion to confront a nearly identical claim of error. See United States v. García-Ortiz, 904 F.3d 102, 105-07 (1st Cir. 2018). On that occasion, we held that any conceivable infirmity in the residual clause of section 924(c) offered the defendant no avenue for relief when the predicate offense qualified as a crime of violence under one of the other clauses of the statutory definition. See id. at 106 (finding that Hobbs Act robbery constituted crime of violence within the purview of section 924(c)'s force clause).

For present purposes, we assume — as the defendant posits — that the residual clause of section 924(c) is unconstitutionally vague. See Johnson, 576 U.S. 596-97. Nevertheless, both Hobbs Act robbery and armed bank robbery qualify as crimes of violence under the force clause of section 924(c). See García-Ortiz, 904 F.3d at 107 (Hobbs Act robbery); Hunter v. United States, 873 F.3d 388, 390 (1st Cir. 2017) (armed bank robbery). As a result, any constitutional shortcoming in section 924(c)'s residual clause does not cast doubt upon the defendant's section 924(c) conviction.

In a variation on this theme, the defendant claims that he is entitled to a new trial because the jury did not make a specific finding as to which of the first four counts comprised the predicate offense for the count five firearms conviction. This claim was not raised below and, thus, engenders plain error review. See Duarte, 246 F.3d at 57.

The Second Circuit has squarely addressed such a claim. It affirmed a section 924(c) conviction, holding that "[b]ecause the jury validly reached a unanimous guilty verdict on every predicate crime alleged," any error in the jury instructions "was necessarily harmless." United States v. Gomez, 580 F.3d 94, 103-04 (2d Cir. 2009). Accordingly, the instruction — even if erroneous — did not affect the defendant's substantial rights. See id. at 104.

So it is here. The jury found the defendant guilty of two counts relating to armed bank robbery and two counts relating to Hobbs Act robbery — all of which qualify as crimes of violence under section 924(c). It follows inexorably that, even though it may have been error for the district court not to have required the jury to reach consensus on a single predicate offense — a matter on which we take no view — any such error was harmless (and, thus, not plain).

In a final jeremiad, the defendant implores us to reverse his firearms conviction because section 924(c) is a "rotten

statutory disposition," which he regards as "unduly unfair and inconsistently applied."  This pejorative claim is entirely undeveloped, and we have held before that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  This is a paradigmatic example of such a case.

## III. CONCLUSION

We need go no further.  For ought that appears, the defendant was fairly tried and justly convicted.  The judgment below is, therefore,

**Affirmed.**